UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 30, 2025

LETTER TO ALL COUNSEL OF RECORD

Re: *David C. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
Civil No. 24-2247-CDA

Dear Counsel:

On August 2, 2024, Plaintiff David C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7) and the parties' briefs (ECFs 11, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on September 21, 2022, alleging a disability onset of January 8, 2022. Tr. 161-62. Plaintiff's claims were denied initially and on reconsideration. Tr. 100-04, 111-14. On April 9, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 46-81. Following the hearing, on March 5, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 26-40. The Appeals Council denied Plaintiff's request for review, Tr. 15-18, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.   **THE ALJ'S DECISION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on August 2, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since January 8, 2022, the alleged onset date." Tr. 31. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "Anxiety (with Panic Attacks); Post-traumatic stress disorder ('PTSD'); Depression; Obesity; and obstructive sleep apnea ('OSA')." Tr. 31. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "spine impairment, chronic mood impairment, and chronic migraines." Tr. 31-32. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 32. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except: He must avoid work at unprotected heights or around dangerous moving machinery (i.e. Forklifts). He is able to understand and carry out simple instructions and routine, repetitive tasks. He is able to apply commonsense understanding to carry out detailed, but uninvolved, instructions. He must avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). He is able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks. He is occasionally able to change activities or work settings during the workday without it being disruptive. He is occasionally able to deal with changes in a routine work setting. He is able to have occasional interaction with supervisors, co-workers and/or the general public. He is frequently able to climb ramps or stairs, occasionally able to climb ladders, ropes, or scaffolds, and frequently able to stoop, kneel, crouch or crawl.

Tr. 35. The ALJ determined that Plaintiff was unable to perform past relevant work as a Respiratory Therapist (DOT[3] #076.361-014), Polysomnographic Technician (DOT #078.362-

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor,

*David C. v. Bisignano*
Civil No. 24-2247-CDA
July 30, 2025
Page 3

042), and Dental Assistant (DOT #079.361-018), but could perform other jobs that existed in significant numbers in the national economy. Tr. 39. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 40.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises one argument on appeal: that "the ALJ did not explain how he decided that Plaintiff 'must avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)' or why he believed such a limitation would be sufficient to accommodate Plaintiff's impairments." ECF 11, at 7-18; ECF 14, at 1-13. Defendant counters that remand is unwarranted because "the court can trace the ALJ's reasoning in finding Plaintiff's ability to perform unskilled work not at a high quota production rate pace." ECF 13, at 6-12.

A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Here, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 34. The ALJ then accommodated for Plaintiff's mental impairments by limiting him to "understand and carry

---

*Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

out simple instructions and routine, repetitive tasks"; "apply commonsense understanding to carry out detailed, but uninvolved, instructions"; "avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)"; "perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task.  However, time off task can be accommodated with normal breaks"; "occasionally able to change activities or work settings during the workday without it being disruptive"; "occasionally able to deal with changes in a routine work setting"; and "occasional interaction with supervisors, co-workers and/or the general public."  Tr. 35.

The ALJ considered Plaintiff's allegations, among other things, that "he cannot work due, primarily, to his mental impairments—anxiety, depression, and PTSD" and that "he developed depression, anxiety, and PTSD while serving [in the military] partly because of a shooting incident on his base."  Tr. 36.  The ALJ also considered Plaintiff's testimony that "dealing with his managers while working was stressful and contributed to his anxiety."  Tr. 36.

Despite Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 36.  The ALJ observed that, while Plaintiff's "mental impairments are diagnosed in his VA mental health treatment records and corroborated by his testimony[,]" the record shows "that even at the outset of treatment, his mental status was within the range of normal."  Tr. 36.  The ALJ noted that Plaintiff's "mental status at his October 2021 session was normal with normal orientation, speech, cooperation, attention, thought content and process, cognition, insight, and judgment."  Tr. 36. Moreover, VA records from May 2022 "also show an entirely normal mental status exam including normal appearance, cooperative and friendly behavior, alert and oriented, normal speech, euthymic mood, full range affect, linear and logical thought content and process, good insight and judgment, normal attention, and intact memory."  Tr. 36-37.

In assessing Plaintiff's mental RFC, the ALJ considered the opinions of the State Agency Psychiatric Consultants who found Plaintiff's "mental diagnoses severe but no more than moderately limiting in mental functioning."  Tr. 38.  The ALJ found the "State's assessment persuasive because it is consistent with the VA treatment records and is supported by [Plaintiff's] testimony and his function reports showing relatively normal and independent daily functioning despite his issues."  Tr. 38.

After examining the objective evidence and medical opinions, the ALJ concluded that, as to Plaintiff's mental impairments, Plaintiff's "VA records show treatment for his anxiety, depression and PTSD: however, even at the outset of treatment his mental status was within the range of normal despite his ongoing symptoms.  His daily activities have remained normal, as well. Furthermore, his most recent treatment records show that [Plaintiff] has improved with symptom control with adherence to treatment."  Tr. 38-39.  As a result, the ALJ found that Plaintiff, among other things, "must avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)." Tr. 35.

Although the ALJ appropriately looked to the objective medical evidence of record in reaching the RFC determination, it is unclear how the cited evidence supports the high-quota production-rate pace provision at issue. The "logical explanation" for an RFC finding is "just as important as" citing the evidence that reinforces that finding. *Thomas*, 916 F.3d at 311. When an ALJ identifies evidence to support a conclusion but fails to "build an accurate and logical bridge" from the evidence to the conclusion, the ALJ's finding cannot be meaningfully reviewed. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Here, the ALJ failed to explain how the evidence supports the conclusion that Plaintiff could not work at a high-quota production-rate pace. The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of Plaintiff's RFC.

But this conclusion does not end the Court's inquiry. In reviewing SSA decisions, the Court applies a harmless-error standard. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009).

Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential. After concluding that Plaintiff had a moderate CPP limitation[4], the ALJ limited Plaintiff to several mental restrictions in the RFC assessment, such as limiting him to "understand and carry out simple instructions and routine, repetitive tasks"; "apply commonsense understanding to carry out detailed, but uninvolved, instructions"; "avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)"; "perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks"; "occasionally able to change activities or work settings during the workday without it being disruptive"; "occasionally able to deal with changes in a routine work setting"; and "occasional interaction with supervisors, co-workers and/or the general public." Tr. 35. However, the ALJ did not explicitly base these mental RFC provisions on any opinions contained in the record. *Cf. Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight"). In any event, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no

---

[4] When a claimant has a mental impairment, an ALJ must make "a specific finding as to the degree of limitation" in CPP. *Patterson*, 846 F.3d at 659. CPP involves "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). When an ALJ determines that a claimant has a moderate CPP limitation, the ALJ must either include a corresponding provision in their RFC assessment or explain why no such provision is warranted. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (holding that the ALJ accounts for the claimant's moderate CPP limitations when limiting the claimant to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

For the reasons discussed above, it is unclear how the ALJ determined that a high-quota production-rate pace limitation was necessary. Nevertheless, the Court cannot conclude that the lack of explanation for this pace limitation amounts to reversible error. To the extent that a pace limitation was necessary at all, the ALJ adopted an RFC provision that was more restrictive than anything suggested within the record. Plaintiff cites multiple portions of the transcript that he believes the ALJ failed to properly evaluate based on the ALJ's statement that the "medical evidence of record shows [Plaintiff] generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace." ECF 11, at 14-16 (citing Tr. 34). However, the ALJ assessed the objective medical evidence Plaintiff cites, and considered evidence of Plaintiff's mental impairments throughout the RFC assessment. Tr. 36-39. To be sure, the ALJ need not discuss every piece of evidence of record or follow a particular format in conducting his analysis. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Considering the ALJ's discussion of the objective medical evidence relevant to Plaintiff's mental impairments and moderate CPP limitation, Plaintiff's argument amounts to a request to reweigh the evidence. "This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

Last, Plaintiff contends that the VE's testimony regarding off-task time and absenteeism should have been incorporated into the ALJ's RFC assessment because Plaintiff's limitations in these areas may preclude work at step five. ECF 11, at 13 (citing Tr. 78-79). Even though the ALJ contemplated Plaintiff's time off-task "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 22-0088, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014)); *see Michael O. v. Kijakazi*, No. BAH-22-2287, 2023 WL 4533318, at *7 (D. Md. July 13, 2023) (holding that an ALJ does not err when excluding off-task

percentage or absenteeism contemplated by a VE). Moreover, even though the ALJ contemplated Plaintiff's absenteeism, a VE's testimony about absenteeism is "not required to be incorporated into the RFC" because such testimony "is a statement of the vocational expert's general observation and experience and does not pertain to [the claimant's] specific functioning." *Vicki M. o/b/o Monte H. v. Comm'r of Soc. Sec.*, No. MKD-17-0437, 2019 WL 438480, at *8 (E.D. Wash. Feb. 4, 2019) (citing 20 C.F.R. § 404.1545(a)(4)). As such, the ALJ did not err by failing to incorporate the VE's testimony regarding off-task time and absenteeism into the RFC assessment.

Additionally, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. Plaintiff also fails to adequately explain how a more detailed explanation of either pace or the mental RFC might change the outcome of this case. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. Sept. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis). For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability. Thus, the ALJ's error was harmless. *Kersey*, 614 F. Supp. 2d at 696. The Court will therefore affirm the ALJ's decision.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge